Du PAGE BANK & TRUST COMPANY, Plaintiff, *v.* Du PAGE BANK & TRUST COMPANY, Trustee, *et al.*, Defendants (E. P. Doyle and Son, Inc., Counterplaintiff-Appellant, *v.* Du Page Bank & Trust Company *et al.*, Counterdefendant-Appellee).

Second District   No. 83—345

Opinion filed March 29, 1984.

John J. Mangan and Nancy A. McKeating, both of Rooks, Pitts, Fullagar & Poust, of Wheaton, for appellant.

Dale W. Bruckner, of Peregrine, Stime, Newman & Ritzman, Ltd., of Wheaton, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

E. P. Doyle and Son (contractor), counterplaintiff in an action filed by the Du Page Bank & Trust Company (lender) to foreclose a trust

deed against property held by the Du Page Bank & Trust Company as trustee under trust No. 2195 with John F. Daniels as sole beneficiary (owner), appeals from a judgment finding that the lender held a lien prior to that of the contractor.

On May 19, 1979, the owner entered into a contract with the contractor to build a restaurant in Glen Ellyn to be called "Track 29," for a construction cost of $474,580. The contract described the work to be done by referring to the architects' plans, by listing the inclusions, exclusions, and changes from those plans, and by providing for possible future change orders at additional cost to the owner.

On August 18, 1979, the owner executed a trust deed, secured by the restaurant to be built. That day, the bank issued a note for $500,000 to the owner personally guaranteed by the beneficiary of the trust. The mortgage was recorded on August 21, 1979.

After the contractor began work, he and the owner executed two change orders, one on January 15, 1980, and one on April 28, 1980, and agreed to additional expenses incurred, bringing the total contract changes to $47,896.48 and bringing the total construction price to exceed the loan amount by $22,476.48.

On June 25, 1980, the owner and the contractor executed an agreement affirming the original contract, agreeing by implication that the contractor had received $500,000, agreeing that $22,476.48 was still owed, and providing that interest would accrue on the unpaid balance at 15% per year beginning June 25. The lender disputes whether these orders form part of the original contract.

On October 30, 1980, the contractor arranged for a plumber to move some vent pipes at the restaurant. The lender disputes whether this work constituted completion of the contract or minor repair and maintenance for the purpose of determining when the contractor's time to file his lien began to run.

On January 7, 1981, the contractor filed his mechanics' lien claim in Du Page County on the Track 29 property, reciting that the last day of work pursuant to contract was October 30, 1980, and claiming $22,476.48 plus interest computed from June 25, 1980.

The lender filed a complaint to foreclose its mortgage February 25, 1981. The contractor filed a petition to intervene, an answer, and a counterclaim, claiming that the owner owed money on the contract and that the contractor's mechanics' lien had priority over the lender's mortgage to the extent of the amount due.

The trial court entered an order January 27, 1983, holding that the contractor possessed a "valid mechanics' lien" and that the lien was "subordinate, inferior, and subject to the first mortgage" of the

lender.

On March 16, 1983, the court denied the contractor's motion to reconsider, entered the decree of foreclosure, found a valid mechanics' lien for the contractor, subject to the trust deed lien, and ordered the property sold. The lender purchased at the sale bidding the approximate balance on its mortgage.

I

The lender claimed priority on the theory that the change orders were supplemental contracts and not entitled to the priority of the contractor's lien based on the original contract. The court concluded that the mortgage lien had priority over the amounts due the contractor under the change orders which were executed after the mortgage was recorded. The contractor argues, however, that the change orders were executed pursuant to the provisions of the general contract which was recorded prior to the mortgage and therefore the amounts claimed form part of the prior lien based on that contract.

Change order No. 2, dated April 25, 1980, included changes in paneling, bar fixtures, additional booths, the kind of tile, additional plumbing and heating work, and attendant labor amounting to $30,896.38. A further change order dated June 25, 1980, included additional electrical work, shelving, glass, decorating, Formica table tops, overage on hardware, and exterior stone and asphalt amounting to $7,476.48. The total lien claims, with the balance of $15,000 unpaid on change order No. 2, came to $22,476.48. There is no dispute as to the priority of the mortgage lien as to the $500,000 paid out on the loan; the dispute concerns the balance due the contractor as a result of these last two change orders.

■ It is undisputed that the lien of the May 19, 1979, construction contract attached on that date. (Ill. Rev. Stat. 1981, ch. 82, par. 1.) It is also clear that a contract which predates the recording date of a mortgage lien is a prior lien, provided the contractor's claim has been timely filed. *Pittsburgh Plate Glass Co. v. Kransz* (1919), 291 Ill. 84, 89-90.

The construction contract provides that the owners shall pay the contractor the contract sum "subject to additions and deductions by Change Order as provided in the Conditions of the Contract ***." Article 15 of the general conditions contains the provision:

> "The Owner, without invalidating the Contract, may order extra work or make changes by altering, adding to or deducting from the work, the Contract Sum being adjusted accordingly. All such work shall be executed under the conditions of the

original contract except that any claims for extension of time caused thereby shall be adjusted at the time of ordering such change."

The parties have not cited any Illinois cases directly deciding the issue of priority between the mortgagor and a contractor as to additional liens resulting from change orders contemplated in the original contract. The contractor relies principally on the case of *Haffner & Taylor v. Perloff* (1932), 174 La. 687, 141 So. 377. In *Haffner*, the contractor sought to establish mechanics' lien claims for extra work done under a construction contract. The supreme court noted that the contract provided for making alterations or doing additional work with the consent of the owner of the building and that as to the items which had gone into the new building the contractor was entitled to a lien "resulting from the registry of the original contract." (174 La. 687, 691, 141 So. 377, 378.) As the lender points out, *Haffner* involved a claim between a contractor and an owner and did not deal with the question of priorities between the contractor and the lender with the mortgage lien. However, the *Haffner* court's conclusion that the additional work would be considered part of the original contract when provision had been made for changes in the contract is contrary to the lender's underlying contention that change orders amount to supplemental contracts. Where a contract expressly provides for alterations and changes and such changes are agreed to and made, they are a part of the original contract and form part of the lien. *Brown v. Lowell* (1875), 79 Ill. 484, 486.

■ We conclude that in this case the contractor's lien for the additional work done and unpaid under the construction contract with the owner has priority over the lender's trust deed lien. The additional work was related in all respects to the building of the restaurant contemplated in the construction contract. The restaurant building in completed form, together with the land, was the contemplated security for the trust deed. The lender, making disbursements under a construction loan, was bound by the provisions of the construction contract which provided expressly for change orders. The lender could have protected itself from being subordinated to the contractor's lien for unpaid extras and changes by so providing in its contract with the owner-borrower, but did not do so.

■ The Mechanics' Lien Act (Ill. Rev. Stat. 1981, ch. 82, par. 1 *et seq.*) is construed strictly as to requirements which bring one within the terms of the statute. (See *Charles A. Hohmeier Lumber Co. v. Knight* (1932), 350 Ill. 248, 252-53; *Robinette v. Servite Fathers* (1977), 49 Ill. App. 3d 585, 586.) The rule of strict construction, how-

ever, applies only to the requirements upon which the right to a lien depends, and is not used to invalidate a lien which has properly attached. (*Watson v. Auburn Iron Works, Inc.* (1974), 23 Ill. App. 3d 265, 273.) The statute will not be applied to thwart just claims and it is not to be construed so as to create pitfalls for the unwary (*United Cork Cos. v. Volland* (1937), 365 Ill. 564, 572), but is construed so as to do substantial justice, once the statutory notice requirements have been strictly complied with. *Armco Steel Corp. v. La Salle National Bank* (1975), 31 Ill. App. 3d 695, 699.

*Healy Ice Machine Co. v. Parks* (1910), 155 Ill. App. 232, relied upon by the lender, does not call for a different conclusion. In *Healy*, there was a dispute between the owner and the contractor as to whether the original contract was fully completed. A supplemental contract was entered into with the contractor to finish the work and to extend the time for completion. The court held that the supplemental contract was part of the original contract and that the contractor's claim was prior to the mortgage recorded after the original contract but before the supplemental contract. (155 Ill. App. 232, 237.) The lender here relies on comments in *Healy* that the supplemental contract "did not cast any additional burden upon the premises" (155 Ill. App. 232, 237). The lender argues from this *dicta* that if a change does create an additional burden the priority is lost. That, however, was not the actual ruling of the case. In any event, we do not consider the *dicta* persuasive under the circumstances before us.

In *National Bank of Republic v. Wells-Jackson Corp.* (1934), 358 Ill. 356, the majority concluded that an agreement, of which the lender had no knowledge, between a tenant and a vendor, that a sprinkler system should not become a fixture but should remain personal property, was superior to the claim of the lender that his mortgage lien embraced the sprinkler system. It was noted that the system had been made a part of the building but could be removed without material injury to the building or to the system. (358 Ill. 356, 364-65.) The dissenting view in *National Bank of Republic* placed considerable emphasis on the fact that the agreement between the tenant and the owner was secret as far as the lender was concerned. (358 Ill. 356, 370 (Shaw, J., dissenting).) Here, we charge the lender with knowledge of the original construction contract which specifically provided that changes could be made.

## II

■ The lender also argues that even if the change orders are considered a part of the original contract so as to antedate the mortgage,

the decision of the trial court may be sustained on the basis that the contractor's lien was not filed within four months of the completion of the work, a statutory requirement to effect priority against parties other than the owner. (See Ill. Rev. Stat. 1981, ch. 82, par. 7.) The lender contends that the contractor, by having stated in the change orders that the work had been performed prior to June 25, 1980, and seeking interest after that date, implicitly acknowledged that all work was completed more than four months prior to the filing of the lien on January 7, 1981.

The contractor relies on work done on October 30, 1980, consisting of having a plumber move vent stacks at the request of the owner. The original location of the stacks resulted in a serious ventilation problem in the restaurant. The contractor notes that he was obligated under the general conditions of the contract to remedy the defect as a part of his requirement to perform in a good and workmanlike manner, and that the work was done at the request of the owner.

The four-month period runs from the date the contract is completed. (Ill. Rev. Stat. 1981, ch. 82, par. 7.) Thereafter, trivial work in the nature of repairs or minor changes will not extend the time for filing a mechanics' lien. (*Alexander Hendry Co. v. Mooar* (1926), 242 Ill. App. 516, 519-20. See also *Miller Brothers Industrial Sheet Metal Corp. v. La Salle National Bank* (1969), 119 Ill. App. 2d 23, 29-30; *De Anguera v. Arreguin* (1968), 92 Ill. App. 2d 381, 384-85.) However, substantial work done at the request or demand of the owner, without which the contract cannot be considered completed, will extend the date of completion. *St. Louis National Stockyards v. O'Reilly* (1877), 85 Ill. 546, 554. See also *Decatur Bridge Co. v. Standart* (1917), 208 Ill. App. 592, 597.

Here, the evidence shows that although the restaurant had opened for business the owner had a problem with gas odors that did not dissipate into the air, making the building unsuitable for its intended use until the ventilation problem had been corrected. The work was substantial, required to complete the contract, and therefore extended the time for filing the lien. The contractor's lien is prior to the lender's lien.

The judgment of the circuit court of Du Page County, subordinating the lien of the contractor E. P. Doyle and Son, Inc., to the first mortgage lien of the Du Page Bank & Trust Company, is reversed.

Reversed.

LINDBERG and VAN DEUSEN, JJ., concur.